COUNTY OF EAU CLAIRE, Plaintiff-Appellant,

v.

Brenda R. RESLER, Defendant-Respondent.

Court of Appeals

*No. 89-0166. Submitted on briefs June 8, 1989.—Decided July 18, 1989.*

(Also reported in 446 N.W.2d 72.)

For plaintiff-appellant there were briefs filed by *Donald J. Hanaway,* attorney general and *Jerome S. Schmidt,* assistant attorney general.

For defendant-respondent there was a brief filed by *William A. Pangman* and *Timothy J. O'Brien* of *William A. Pangman & Associates,* of Waukesha.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE P.J. Eau Claire County appeals an order suppressing Brenda Resler's breath test results during a trial on the charge of operating a motor vehicle while intoxicated (OWI), sec. 346.63(1)(a), Stats., and also dis-

missing the charge of operating a motor vehicle with a blood alcohol concentration in excess of 0.1% (BAC), sec. 346.63(1)(b), Stats. The trial court concluded that the "INFORMING THE ACCUSED" form Resler signed when consenting to the breath test violated the requirements of the informed consent statute because the information on the form failed to inform her of the potential penalties other than revocation of her operating privilege. *See* sec. 343.305(4)(c), Stats. Because we conclude that the trial court improperly suppressed the chemical test results for a procedural violation of the informed consent statute, we reverse. We also reverse the order dismissing the charge of operating a motor vehicle with a blood alcohol concentration in excess of 0.1%.

Resler was arrested and charged with OWI and BAC. The parties agreed that the only information the arresting officer gave her prior to her consenting to a breath test was that read directly from a standard Department of Transportation "INFORMING THE ACCUSED" form. That form gives the accused the following information:

> 1. You are deemed under Wisconsin's Implied Consent Law, s. 343.305, to have consented to tests of your breath, blood or urine for the purpose of determining the presence or quantity of alcohol or controlled substances in your blood or breath.
>
> 2. If you refuse to submit to any such tests, your operating privilege will be revoked as provided under s. 343.305(9).
>
> 3. In addition to the test or tests to which you have submitted at the request of a law enforcement officer, you may request the alternate test the department is prepared to administer, or at your own expense, reasonable opportunity to have any qualified person of your own choosing administer a chemical test . . ..

4. If you take one or more chemical test(s) and the results of any test indicate a blood alcohol concentration of 0.10% or more, *your operating privilege will be administratively suspended* as provided under s. 343.305(7). (Emphasis added).

Section 343.305(4), part of the informed consent statute, requires that the following information be provided to the subject of a chemical test:

Information. At the time a chemical test specimen is requested . . . the person shall be orally informed by the law enforcement officer that:

(a) He or she is deemed to have consented to tests . . ..

(b) If testing is refused, the person's operating privilege will be revoked under this section;

(c) If one or more tests are taken and the results of any test indicate that the person has a blood alcohol concentration of 0.1% or more, *the person will be subject to penalties and the person's operating privilege will be suspended under this section;* and

(d) After submitting to testing, the person tested has the right to have an additional test made by a person of his or her choosing. (Emphasis added.)

Resler challenged the adequacy of the "INFORMING THE ACCUSED" form in a pretrial motion prior to her OWI-BAC trial. She argued that the information on the form failed to advise her of the "penalties" other than suspension of operating privileges if the results of a chemical test show a blood alcohol concentration of 0.1% or more, as required by sec. 343.305(4)(c). The trial court agreed and ordered suppression of the chemical test evidence at the trial on the OWI charge and dismissed the BAC charge with prejudice.

649

The first issue on appeal is whether sec. 343.305(4) mandates that a person arrested on an OWI–BAC charge be orally informed that a chemical test result indicating a blood alcohol concentration of 0.1% or more will subject that person to penalties in addition to the administrative suspension of operating privileges. The interpretation of a statute is a question of law that we review without deference to the trial court's decision. *Luther Hosp. v. Eau Claire County,* 115 Wis. 2d 100, 104, 339 N.W.2d 798, 800 (Ct. App. 1983).

The county contends that the wording of sec. 343.305(4) is ambiguous in that the word "penalties" is not defined within the statute. In addition, the county argues that Resler had constructive notice of additional penalties by virtue of her arrest on the OWI charge. We are not persuaded. The clear language of sec. 343.305(4) mandates that information concerning penalties be given to the accused when arrested for a violation of sec. 346.63(1) or (2m). *See* sec. 343.305(3) and (4), Stats. Because Resler was arrested for violating two subsections of sec. 346.63(1), she was entitled to be informed that a BAC test result of 0.1% or more would result in penalties in addition to suspension of driving privileges.

Resler does not argue that sec. 343.305(4)(c) requires that the accused be informed of all collateral consequences he or she would face if convicted under sec. 346.63(1). The defendant has no right to be informed of the collateral consequences that would flow from a finding of guilt on the underlying charge. *State v. Madison,* 120 Wis. 2d 150, 161, 353 N.W.2d 835, 841 (Ct. App. 1984).

Resler does contend, however, that she was entitled to be informed of statutorily-prescribed penalties resulting from a conviction for driving with a BAC of 0.1% or more, including a fine or a forfeiture, suspension or revocation of her driving privileges, points added to her driving record, and a possible jail sentence in the event she is determined to be a repeat offender. *See* secs. 343.30 and 346.65, Stats. We agree that the statute requires that Resler should be informed of these statutorily-prescribed penalties prior to consenting to a chemical test under sec. 343.305.

The second issue is whether the suppression of chemical test results during a prosecution for a substantive offense separate from the informed consent statute is an appropriate remedy for noncompliance with the statutory language of sec. 343.305(4)(c). Resler contends that the trial court appropriately excluded these test results, relying on the Wisconsin Supreme Court's decisions in *State v. McCrossen,* 129 Wis. 2d 277, 385 N.W.2d 161, *cert. denied,* 479 U.S. 841 (1986), and *City of Lodi v. Hine,* 107 Wis. 2d 118, 318 N.W.2d 383 (1982), and of this court in *State v. Kennedy,* 134 Wis. 2d 308, 396 N.W.2d 765 (Ct. App. 1986), and *State v. Renard,* 123 Wis. 2d 458, 367 N.W.2d 237 (Ct. App. 1985).

Resler's reliance on these cases is misplaced. These cases are distinguishable from the present case because they involved denial of access to material evidence as a result of the state's failure to follow procedures prescribed in sec. 343.305 and related statutes. In *Hine,* the defendant requested and was denied access to the test ampoule of blood the state used in its testing procedures. *Id.* at 122, 318 N.W.2d at 384. In *McCrossen and Renard,* suppression of the test results was approved as a sanction for violating a defendant's statutory right to a

requested second chemical test. *McCrossen,* 129 Wis. 2d at 297, 385 N.W.2d at 170; *Renard,* 123 Wis. 2d at 461, 367 N.W.2d at 238–39. Resler's citation to *Kennedy* is dicta in a footnote, which merely references this court's holding in *Renard. Kennedy,* 134 Wis. 2d at 319 n. 1, 396 N.W.2d at 769 n. 1.

Whether suppression is an appropriate remedy under the facts of this case is controlled by *State v. Zielke,* 137 Wis. 2d 39, 403 N.W.2d 427 (1987). The authorities never informed Zielke of his right to an alternative test as required under the informed consent statute. The supreme court in *Zielke* held that "the implied consent law is designed to facilitate, not impede, the gathering of chemical test evidence in order to remove drunk drivers from the roads . . .. It creates a separate offense that is triggered upon a driver's refusal to submit to a chemical test of his breath, blood or urine." *Id.* at 41, 403 N.W.2d at 428. Noncompliance with the procedures specified in the implied consent law "does not render chemical test evidence otherwise constitutionally obtained inadmissible at the trial of a substantive offense involving intoxicated use of a vehicle." *Id.*

In *Zielke,* the court held that, absent the denial of access to material evidence that existed in *McCrossen,* a procedural violation of sec. 343.305 would entail the following consequences: (1) the accused's driver's license could not be revoked for refusing to submit to chemical tests; (2) the state could not rely at trial on the statutory presumptions concerning the admissibility of chemical test results in sec. 343.305(7); (3) and the fact of refusal could not be used in a subsequent criminal prosecution for drunk driving as evidence of the driver's consciousness of guilt. *Zielke,* 137 Wis. 2d at 53–54, 403 N.W.2d at 433. Suppression of test results at a trial on the underly-

ing substantive offense is not a penalty contemplated by the statute.

Here, as in *Zielke,* the implied consent law did not present the exclusive legal means for the police to obtain admissible chemical test evidence. *Id.* at 51–52, 403 N.W.2d at 433. The breath test evidence was legally obtained incident to Resler's arrest because the arresting officer had two independent bases for obtaining the breath sample: (1) probable cause to believe the OWI statute had been violated and exigent circumstances (blood rapidly metabolizes alcohol, leading to the eventual disappearance of the evidence of intoxication), and (2) the driver's actual consent to the testing. The *Zielke* court recognized that the implied consent statute was not meant to "give greater rights to an alleged drunk driver under the fourth amendment than those afforded any other criminal defendant." *Id.* at 52, 403 N.W.2d at 432.

In *Zielke,* the court stated: "The implied consent law is an important weapon in the battle against drunk driving in this State. Neither the law, its history [n]or common sense allows this court to countenance its use as a shield by the defense to prevent constitutionally obtained evidence from being admitted at trial." *Id.* at 56, 403 N.W.2d at 434. We conclude that suppression of Resler's blood test results in a trial on the OWI charge was an inappropriate remedy for a procedural violation of the informed consent statute.

The third issue is whether the BAC charge, sec. 346.63(1)(b), was properly dismissed. The trial court dismissed this charge based on its suppression of the chemical test results. Without these results, the county would be unable to prove that Resler had "a blood alcohol concentration of 0.1% or more by weight of alcohol in [her]

653

blood or 0.1 grams or more of alcohol in 210 liters of [her] breath," as required by the language of sec. 346.63(1)(b).

The BAC charge is a separate substantive offense from that created by the informed consent statute. The BAC charge is triggered by driving with a BAC in excess of 0.1%, while an offense under the informed consent law is triggered by refusing to submit to chemical tests. In view of our holding that suppression is an inappropriate remedy for a procedural violation of the informed consent statute in a prosecution for a separate substantive offense, we conclude that the trial court's order dismissing the BAC charge should be reversed.

For these reasons, we hold that the failure of the arresting officer to inform Resler of the "penalties" associated with test results of 0.1% BAC or higher amounted to noncompliance with sec. 343.305(4), but this noncompliance should not result in the suppression of chemical test evidence otherwise legally obtained. The trial court's order suppressing the test results and dismissing the BAC charge is reversed.

*By the Court.*—Order reversed.