CITY OF MEQUON, Plaintiff-Respondent,

v.

Ralph J. HESS, Defendant-Appellant.

Court of Appeals

*No. 90–0711. Submitted on briefs August 24, 1990.—Decided October 3, 1990.*

(Also reported in 463 N.W.2d 687.)

501

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Ganzer* and *Jeffrey M. Leggett* of *Fiorenza & Hayes, S.C.,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark A. Erlandson* and *John A. Meyer* of *Prieve, Meyer & Nestingen, S.C.,* of Milwaukee.

Before Brown, Scott and Anderson, JJ.

BROWN, J.  Ralph J. Hess appeals a judgment resulting from jury verdicts finding him guilty of operating a motor vehicle while intoxicated (OWI) and operating a motor vehicle with a blood alcohol concentration (BAC) of 0.1% or more. He also attacks the underlying order denying his motion to suppress the evidence. Hess asserts that the trial court erred in admitting his breathalyzer test results into evidence because the arresting officer failed to provide him with warnings he claims are required under sec. 343.305(4), Stats., (1987–88), and because his breathalyzer results varied widely. We hold that the breathalyzer test results were properly admitted and affirm the trial court's ruling.

Hess was arrested in the city of Mequon for operating a motor vehicle while under the influence of an intoxicant and for operating a motor vehicle with a blood alcohol concentration of 0.1% or more. The arresting officer requested that Hess provide a breath sample to determine the presence or quantity of alcohol in his

blood or breath. At that time, the officer advised Hess, in part, as follows:

> If you take one or more chemical test(s) and the results of *any* tests indicate a blood alcohol concentration of 0.10% or more, *in addition to other penalties which may be imposed,* your operating privilege will be administratively suspended as provided under s. 343.305(7) Wis. Stats. [Emphasis added.]

Hess then agreed to take a breathalyzer test. The first test revealed a BAC of 0.117%. Subsequent tests were taken with readings as follows: 0.142%, 0.136%, and 0.149%. Hess's motion to suppress the test results were denied both on motion in limine and motions after verdict.

In accordance with sec. 343.305(4), Stats., the police officer read Hess the appropriate warnings from the "INFORMING THE ACCUSED" sheet.[1] Nonetheless,

---

[1] The "INFORMING THE ACCUSED" sheet states in pertinent part:

A law enforcement officer requesting a person to take one or more chemical tests under s.343.305(2) Wis. Stats. (identified below) shall, at the time of the request and prior to administering any such test, inform the person:

1. You are deemed under Wisconsin's Implied Consent Law, s.343.305, to have consented to tests of your breath, blood or urine for the purpose of determining the presence or quantity of alcohol or other drugs in your blood or breath.

2. If you refuse to submit to any such tests, your operating privilege will be revoked as provided under s.343.305(9) Wis. Stats.

3. In addition to the test or tests to which you have submitted at the request of a law enforcement officer, you may request the alternate test the department is prepared to administer, or at your own expense, reasonable opportunity to have any qualified person of your own choosing administer a chemical test for the purpose specified under s.343.305(2) Wis. Stats.

Hess argues that an OWI–BAC suspect must be advised not only of the statutory language in sec. 343.305(4)(c), but also of the *specific* penalties which might flow from an OWI–BAC, including a fine, forfeiture, suspension or revocation of driving privileges, point reduction and a possible jail sentence. Hess's argument is based on *County of Eau Claire v. Resler,* 151 Wis. 2d 645, 446 N.W.2d 72 (Ct. App. 1989), which states that the statute requires a warning of "these statutorily-prescribed penalties prior to consenting to a chemical test under sec. 343.305." *Id.* at 651, 446 N.W.2d at 74.

Hess's reliance on *Resler* is misplaced. In *State v. Lucarelli,* 157 Wis. 2d 724, 460 N.W.2d 439 (Ct. App. 1990), this court concluded that "the *Resler* court's comment that sec. 343.305(4)(c), Stats., requires that the suspect be advised of all possible OWI penalties was gratuitous and not necessary to the ultimate holding . . .." *Id.,* slip op. at 727, n.2, 460 N.W.2d 440. As such, the *Resler* language was found to be dictum and therefore not controlling. *Lucarelli* held that the *Resler* language relied upon by Hess was not the law. It is not the law here either.

Hess next claims that his statutory rights were violated because the warning he received under sec. 343.305(4), Stats., only informed him that the results of *any* breathalyzer tests would subject him to penalties. He claims that this language is directly contradictory to sec. 343.305(8)(b)2.d.[2]

---

4. If you take one or more chemical test(s) and the results of any test indicate a blood alcohol concentration of 0.10% or more, in addition to other penalties which may be imposed, your operating privilege will be administratively suspended as provided under s.343.305(7) Wis. Stats.

[2]Section 343.305(8)(b)2.d, Stats., was amended by sec. 191,

In particular, Hess observes the following: section 343.305(4)(c), Stats., requires a person to be informed that if *any test* which he or she takes indicates a BAC of 0.1% or more, the person will be subject to penalties and his or her operating privilege will be suspended. Subsection (8)(b)2., on the other hand, addresses which issues can be raised at an administrative hearing. According to subsec. (8)(b)2.d, a person may challenge whether *each* of the tests taken indicated a BAC of 0.1% or more.[3]

Hess argues that if an accused is given the "any test" warning set forth in subsec. (4), the logical conclusion to be drawn is that one test result of 0.1% or more will be conclusive, regardless of the results of any further tests. Therefore, if the initial test indicates a BAC of 0.1% or more, any incentive to request a second test will be lost. *See State v. Walstad,* 119 Wis. 2d 483, 524–29, 351 N.W.2d 469, 489–92 (1984). Thus, Hess concludes that subsec. (4)(c) contravenes subsec. (8)(b)2.d.

■

The meaning of a statute is a question of law and a reviewing court is not bound by the trial court's conclusion. *Hemerley v. American Family Mut. Ins. Co.,* 127 Wis. 2d 304, 307, 379 N.W.2d 860, 862 (Ct. App. 1985). "The primary source of statutory construction is the language of the statute itself. If the statutory language is plain and clearly understood, that meaning must be given to the statute." *Abraham v. Milwaukee Mut. Ins. Co.,* 115 Wis. 2d 678, 680, 341 N.W.2d 414, 416 (Ct. App. 1983) (citations omitted).

---

1989 Wis. Act 105. The minor wording change, effective December 20, 1989, does not affect this appeal.

[3]Hess claims the Department of Transportation favors advising the accused that *each* test taken must result in a BAC of 0.10% or more before an administrative suspension will occur.

The language in sec. 343.305(4), Stats., indicates that the accused be informed only of the ramifications of *any test* result of 0.1% or more, not of each one. Whether *each* of the test results indicates a BAC of 0.1% or more can only be challenged at the administrative hearing, not at the time the tests are taken. The clear reading of the statute is that any test result over 0.1% will cause immediate license suspension, but the department may consider each individual test in deciding whether the suspension remains in force.

We recognize that the use of the word "any" in the statute instead of "each" may discourage a defendant from taking subsequent tests. However, any perceived statutory contradictions must be corrected by the legislature, not by the court of appeals. Thus, the warnings given to Hess were both permissible and proper under the current statute.

Hess additionally argues that the use of the word "any" violated his constitutional rights. Hess did not raise this as a constitutional issue in the trial court, nor does he now base his argument on any particular constitutional provision. He merely argues that sec. 343.305, Stats., is unconstitutional. The court of appeals will not generally consider an issue raised for the first time on appeal. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145 (1980). This is especially so for a claim that a statute is unconstitutional. *Tomah-Mauston Broadcasting Co. v. Eklund,* 143 Wis. 2d 648, 657–58, 422 N.W.2d 169, 173 (Ct. App. 1988). Consequently, we do not reach Hess's claim that use of the word "any" deprived him of a constitutional right.

Finally, Hess argues that the trial court should have suppressed the breathalyzer test results because of their

506

variation from 0.117% to 0.149%. He argues that the variation is so prejudicial that a jury would be unable to properly assess its probative value pursuant to sec. 904.03, Stats. We disagree.

The issue of reliability or accuracy of the test results is one properly left for the jury to decide, not the court. The issue is not one of admissibility but rather what weight the trier of fact gives to such evidence. The supreme court in *State v. Disch*, 119 Wis. 2d 461, 351 N.W.2d 492 (1984), made this very statement. It wrote:

> The result of a chemical test, although admissible, is open to rebuttal by the defendant, as a matter of defense, to adduce countervailing evidence of the unreliability or inaccuracy of the result. It is at this stage, *after admission,* that the defendant may attack the weight and credibility to be given the test.

*Id.* at 477, 351 N.W.2d at 500 (emphasis added). We therefore reject Hess's arguments and affirm.[4]

*By the Court.*—Judgment and order affirmed.

---

[4]Hess also sought suppression of the breathalyzer test results under Art. I, Sec. 9 of the Wisconsin Constitution which states in relevant part: "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character . . .." There is more than one response we could make concerning this argument. However, it is enough to say that we do not reach this issue because Hess has not demonstrated error in any of the warnings given. Therefore, because no right asserted by Hess was violated, there is no necessity for a remedy.