WISCONSIN ELECTRIC POWER COMPANY, Wisconsin Power & Light Company, Wisconsin Public Service Corporation, Madison Gas & Electric Company, Westinghouse Electric Corporation and Stone & Webster Engineering Company, Petitioners-Appellants-Petitioners,

V.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent.

Supreme Court

*No. 80–1402.  Argued November 30, 1982.—
Decided February 3, 1983.*

(Also reported in 329 N.W.2d 178.)

For the petitioners-appellants-petitioners there were briefs by *Gerald Charnoff, P.C., Robert E. Zahler, Hannah E.M. Lieberman* and *Shaw, Pittman, Potts & Trowbridge,* Washington, D.C.; *Barton Z. Cowan, John R. Kenrick* and *Eckert, Seamans, Cherin & Mellott,* Pittsburgh, Pennsylvania; *Hugh T. Lee,* and *Stone & Webster Engineering Corporation,* Boston, Massachusetts; *David E. Beckwith, Nancy Sennett* and *Foley & Lardner,* Milwaukee, and oral argument by *Robert E. Zahler,* Washington, D.C.

For the respondent the cause was argued by *Jon Erik Kingstad,* assistant chief counsel, with whom on the brief was *Steven M. Schur,* chief counsel.

DAY, J.   This is a review of a decision of the court of appeals published at 106 Wis. 2d 142, 316 N.W.2d 120 (Ct. App. 1981), which affirmed a judgment of the circuit court for Dane county, William D. Byrne, Judge, in a ch. 227 proceeding.

The sole issue[1] considered on review is: Does the term "business information" as utilized in the definition of

---

[1] The court of appeals considered the question of whether PSC abused its discretion in rejecting uncontradicted evidence that the nondisclosure of the information in question would afford a competitive advantage to the appellants. We do not address this question.

Under sec. 943.205(2)(a), Stats., the question of competitive advantage arises only after a determination has been made that the information sought be protected is "business information." We conclude that the cost and contracts information submitted by the petitioners to the PSC is not business information. Thus, whether or not this information gives a competitive advantage to the petitioners is immaterial.

The court of appeals also considered the question of whether the grant of a protective order is left to agency discretion under the "may order" language in sec. 227.09(7)(a). 106 Wis. 2d at 146, fn. 4. A determination of this question is not essential to our decision here and thus we express no opinion on this issue.

trade secret contained in sec. 943.205(2)(a), Stats. 1979–80,[2] encompass the contracts and pricing and cost information submitted by the petitioners[3] to the Public Service Commission (PSC) ?

We conclude it does not. We therefore affirm the decision of the court of appeals.

As part of the joint applicants' application to the PSC to construct a nuclear power plant in Jefferson county, the PSC requested the applicants to submit draft contracts, bids, and letters of negotiation between the applicants and vendors for the project. The joint applicants, and later Westinghouse and Stone & Webster, requested, pursuant to sec. 227.09(7), Stats. 1979–80,[4] that the material in question be determined to be a trade secret within the meaning of sec. 943.205(2)(a), and that a protective order be issued restricting public access to such material.

---

[2] "943.205 **Theft of trade secrets.** . . . (2)(a) 'Trade secret' means the whole or any portion or phase of any scientific, technical, laboratory, experimental, development or manufacturing information, equipment, tooling, machinery, design, process, procedure, formula or improvement, or any business information used or for use in the conduct of a business, which is manifestly intended by the owner not to be available to anyone other than the owner or persons having access thereto with the owner's consent and which accords or may accord the owner a competitive advantage over other persons."

[3] The petitioners consist of Wisconsin utilities which participated in an application to the PSC to construct a nuclear power plant in the town of Koshkonong, Jefferson county, Wisconsin (joint applicants) and two vendors of nuclear power plant components, Stone & Webster Engineering (Stone & Webster) and Westinghouse Electric Corporation (Westinghouse).

[4] "227.09 **Hearing examiners; examination of evidence by agency.** . . . (7)(a) Notwithstanding any other provision of law, the hearing examiner presiding at a hearing may order such protective measures as are necessary to protect the trade secrets of parties to the hearing.

"(b) In this subsection 'trade secret' has the meaning given under s. 943.205(2)(a)."

A hearing was held before a hearing examiner on this request. Following the hearing, a protective order covering the material was issued. On May 24, 1977, exceptions to the hearing examiner's ruling were perfected. On November 8, 1977, the PSC issued an order overruling the examiner and determining that the materials were not on their face entitled to protection from public disclosure. Both the decision of the PSC and the hearing examiner were made solely on the basis of the documents before them. No additional evidence was submitted.

The petitioners then commenced an action in the circuit court for Dane county, William F. Eich, Judge, pursuant to sec. 227.16(1)(a), Stats. 1977, to review the PSC's order. On May 4, 1978, Judge Eich issued an order remanding the matter to the PSC for further hearings to provide the petitioners an opportunity to demonstrate that the materials warranted trade secret protection.

On remand, at a series of hearings held in May, 1978, before a hearing examiner, the petitioners produced testimony in support of their position that the materials warranted trade secret protection. All persons testifying were employed by the petitioners. The hearing examiner again granted such protection.

On February 15, 1979, the PSC in a two to one decision issued the order which is the subject of this review. In its decision, the PSC dissolved the protective order which had been issued by the hearing examiner and opened the materials to public inspection. The PSC stayed the order pending review. Also made subject to public inspection were the transcripts of the *in camera* sessions which took place in the course of the proceedings.

The petitioners again sought review of the PSC's order in the circuit court for Dane county, William D. Byrne, Judge. On August 18, 1980, Judge Byrne issued a judg-

ment affirming the PSC's order.[5] The petitioners appealed this judgment to the court of appeals. That court affirmed the circuit court's judgment. The court of appeals concluded that the documents were not statutory "business information" and thus not entitled to trade secret protection under sec. 227.09(7), Stats. This affirmed the PSC's finding that nothing in the documents was "business information."

Under sec. 227.09(7)(a), Stats., a PSC hearing examiner may issue protective orders to protect the trade secrets of parties to a hearing. In sec. 227.09(7)(b), trade secret is defined by reference to sec. 943.205(2)(a). Section 943.205 is a criminal statute. The definition of a trade secret contained therein reads in relevant part as follows:

> "(2)(a) 'Trade secret' means . . . any *business information* used or for use in the conduct of a business, which is manifestly intended by the owner not to be available to anyone other than the owner or persons having access thereto with the owner's consent and which accords or may accord the owner a competitive advantage over other persons." (Emphasis added.)

Where a statute is clear on its face, this court will not look outside of the language of the statute in applying it. *Swanson Furniture v. Advance Transformer,* 105 Wis. 2d 321, 326, 313 N.W.2d 840 (1982).

The language of this statute is not clear. If all information "used or for use in the conduct of a business" could be characterized as a trade secret, then the legislature's use of the word "business" before "information" would be unnecessary.

If possible, this court will avoid a construction which makes a word in a statute superfluous. *County of Colum-*

---

[5] Although Judge Byrne affirmed the PSC's order in his memorandum decision dated July 24, 1980, he rejected much of the reasoning used by the PSC to support its position.

*bia v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129 (1980). Clearly the legislature intended "business information" to be a category apart from other types of information.

Although business information may be protected as a trade secret, that term is not defined in the statute. However, in the past this court has had occasion to consider the kinds of information that will qualify for trade secret protection. *Corroon & Black v. Hosch,* 109 Wis. 2d 290, 325 N.W.2d 883 (1982); *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis. 2d 202, 267 N.W.2d 242 (1978); *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis. 2d 445, 147 N.W.2d 529 (1967).

In *Abbott,* this court expressly adopted the general law of trade secrets set out in the Restatement, 4 *Torts.* 33 Wis. 2d at 445. Specifically, this court referred to the definition of a trade secret which is contained in sec. 757, Comment b of the Restatement. The court's use of this definition was repeated in both *Van Zeeland,* 84 Wis. 2d at 211, and *Corroon & Black,* 109 Wis. 2d at 295.

The definition the legislature chose to use to define a trade secret for PSC purposes is contained in a criminal statute. Criminal statutes must be strictly construed in favor of the accused. *State v. Devitt,* 82 Wis. 2d 262, 269, 262 N.W.2d 73 (1978). Since this case is not a criminal one, the question is whether a strict construction of this statute is appropriate. We conclude that it is.

Section 990.001(5)(b), Stats. 1979–80, sets out the rule for construing a statute which contains a reference to another statute. Under that section, the referenced statute ". . . includes . . . any interpretation or construction that has been adopted with respect to the referenced statute. . . ." Section 943.205(2)(a) has never

been construed by this court. However, given this court's long adherence to the rule of strict construction of criminal statutes, this statute must be strictly construed. We conclude that the rule of strict construction was intended by the legislature to carry over to the definition of trade secret as used in sec. 227.09 (7).

This court must read the term "business information" narrowly but in a manner which gives effect to the intent of the legislature.

This court has adopted the definition of a trade secret contained in the Restatement of *Torts*, sec. 757, Comment b, which reads in part:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. It differs from other secret information in a business . . . in that *it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract* . . . A trade secret is a process or device for continuous use in the operation of the business." (Emphasis added.)

As shown by the comment, a trade secret differs from other confidential information in a business in that it is not information as to a single event in the conduct of a business. It is only confidential information which is used continuously in the operation of a business which is given protection under sec. 757. This limitation exists to narrow what would otherwise be a very broad definition of a trade secret.[6]

---

[6] Klitzke, *The Uniform Trade Secrets Act*, 64 Marq. L. Rev. 277, 278 (1980–81).

While some of the policies underlying the Wisconsin cases on trade secrets and the Restatement may not be implicated in the present case, we nonetheless conclude that the definition of a trade secret which is set out above should be applied. In *Corroon & Black, Van Zeeland* and *Abbott,* this court narrowly read the definition of a trade secret so as to effectuate the public policies of encouraging business competition and facilitating worker mobility. *Corroon & Black,* 109 Wis. 2d at 299.

While those considerations are not present here, the need to strictly construe the criminal statute provides strong support for a restricted definition of the otherwise vague term "business information."

The Restatement separates information continuously used in a business (business information) from that which relates only to a single event (for example, a bid for contract). This distinction is similar to that which appears in sec. 943.205 (2) (a), Stats. That statute gives protection only to business information used in a business and not to all information used in a business. We conclude that the statutory term business information includes only such information that is used continuously in the operation of a business.

Applying that definition to the facts of this case, we conclude that the materials here involved are not business information within the meaning of the statute. The information relates solely to the purchase of services and equipment to be used in the construction of a specific nuclear power plant. It is not to be continuously used in the business of the petitioners[7] but rather reflects only "information to single or ephemeral events in the conduct of the business."

*By the Court.*—Decision of the Court of Appeals is affirmed.

---

[7] There was testimony by one of the petitioners' witnesses that each contract for a nuclear power plant had to be tailor-made to the specific project.